UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NARRAGANSETT INDIAN MEETING      :
CHURCH,                          :
         Plaintiff,            :
                                 :
    v.                           :     C.A. No. 21-332-MSM
                                 :
IRVING JOHNSON,                  :
         Defendant.            :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court pursuant to Fed Rs. Civ. P. 26(c) and 30 is the motion of

Plaintiff Narragansett Indian Meeting Church ("Church"), a Rhode Island non-profit corporation,

for a protective order to strike and/or limit the topics listed in the Fed. R. Civ. P. 30(b)(6)

deposition notice issued by Defendant Irving Johnson.[1]  ECF No. 37.

**I.**      **Standard of Review**

Pursuant to Fed. R. Civ. P. 26(b),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.

Id.  When the recipient of a discovery request seeks protection from the discovery, the Court has

wide latitude in designing protective orders pursuant to Fed. R. Civ. P. 26(c)(1) for good cause to

protect against annoyance, embarrassment or undue burden occasioned by the discovery.

---

[1] The Church's motion also asked the Court to order that the Church may designate prior witness testimony in lieu of producing an organizational witness.  ECF No. 37 at 1.  Because the Church has not advised the Court of any specific testimony, the Court does not address this aspect of the motion except to note that a properly prepared Fed. R. Civ. P. 30(b)(6) designee may answer by adopting specifically designated prior testimony.

Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993).  Such an order may also be based on the Court's determination that the discovery sought is disproportional, unreasonably cumulative or duplicative, or is otherwise outside the scope permitted by Fed. R. Civ. P. 26(b)(l).  "The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." McCormick v. Dresdale, C.A. No. 09-474-PJB-LM, 2011 WL 13364595, at *1 (D.R.I. June 3, 2011) (internal quotation marks omitted).

Rule 30(b)(6) is a discovery tool that requires the noticing party to describe topics of examination of an entity designee within the scope of permissible discovery with "reasonable particularity." Fed. R. Civ. P. 30(b)(6).  Once served with a Fed. R. Civ. P. 30(b)(6) deposition notice, the responding party is required to produce one or more witnesses knowledgeable about the subject matter of the noticed topics based not just on personal knowledge but also based on preparation of information known to or reasonably available to the responding entity about the designated topics.  Hendricks v. Aetna Life Ins. Co., Case No. 2:19-cv-06840-AB(MAAx), 2024 WL 4720802, at *4 (C.D. Cal. Sept. 3, 2024); see New Hampshire Youth Movement v. Scanlan, __ F.3d __, 2026 WL 1500857, at *43 (D.N.H. May 28, 2026), appeal docketed, No. 26-1740 (1st Cir. June 22, 2026).  Thus, a properly crafted Fed. R. Civ. P. 30(b)(6) notice imposes a significant duty of preparation of each topic on the testifying entity designee.  Nichols v. Credit Union 1, Case No. 2:17-cv-02337-APG-GWF, 2018 WL 11404371, at *2 (D. Nev. Dec. 26, 2018) (Rule 30(b)(6) deposition may necessarily entail considerable preparation).  In light of this significant duty to prepare, the requirement that discovery must be proportional is an important consideration; for example, the responding party becomes subject to a disproportionally impossible preparation task if the noticing party has not described the topics with sufficient particularity or if the topics are vague or overly broad.  McBride v. Medicalodges, Inc., 250

2

F.R.D. 581, 584 (D. Kan. 2008) (requesting party must designate with "painstaking specificity");

see Fed. Ins. Co. v. Delta Mech. Contractors, LLC, C.A. No. 11-048ML, 2013 WL 1343528, at

*4 (D.R.I. Apr. 2, 2013) (broad topics of inquiry do not give rise to obligation to prepare witness

to answer every conceivable detailed question relating to topic).  The irrelevancy of the topics or

the disproportionality of the burden imposed by the important task of preparation on each topic

are appropriate reasons for seeking a protective order.  See Conning v. Halpern, Civil Action No.

18-cv-12336-ADB, 2020 WL 5803188, at *5 (D. Mass. Sept. 29, 2020).  Courts have not

hesitated to issue protective orders when an entity is asked to respond to an overly broad or

unfocused Fed. R. Civ. P. 30(b)(6) deposition notice.  Alvarado-Herrera v. Acuity, 344 F.R.D.

103, 108 (D. Nev. 2023), aff'd sub nom. Alvarado-Herrera v. Acuity A Mut. Ins. Co., Case No.

2:22-cv-00438-CDS-NJK, 2023 WL 5035323 (D. Nev. Aug. 4, 2023).  A protective order is also

appropriate if the information can be obtained more efficiently through other means.  Id.

## II.    Claims and Defenses

Consistent with 42 U.S.C. § 1996 ("Protection and Preservation of Traditional Religions

of Native Americans"), the Church is an independent entity and has long (since 1934 as an

incorporated entity) engaged in "Indian Religious Affairs"[2] to conduct services and to perpetuate

the history, traditions, customs, and ideals of the Narragansett Indian Tribe (the "Tribe"), a

federally recognized sovereign Indian nation.  See generally ECF No. 1 ¶ 1; see also

Counterclaim, ECF No. 7 ¶ 3; ECF No. 9 ¶ 3.  The Church owns a plot of land – approximately

7.37 acres of largely undeveloped woodlands – located in Charlestown, Rhode Island (the

"Church Land"), which is specifically referenced by a recorded deed.  ECF No. 1 ¶¶ 5-6.  The

---

[2] Entity Summary, Rhode Island Department of State, Secretary of State, https://business.sos.ri.gov/CorpWeb/CorpSearch/CorpSummary.aspx?FEIN=000026442&SEARCH_TYPE=3.

Church's Complaint alleges that, without consent, permission or authorization, Defendant Irving Johnson trespassed on the Church Land at various times in 2017 through April 2019, cut trees on the Church Land in April and November 2017, and placed a mobile camping trailer on the Church Land in May 2017. Id. ¶¶ 17-29. The Church seeks money damages, including treble damages for the trees that were destroyed. Id. at 6. It does not seek injunctive relief. See Narragansett Indian Meeting Church v. Johnson, No. 1:21-cv-00332-MSM-PAS, 2023 WL 5094924, at *1 (D.R.I. Aug. 9, 2023) ("Mr. Johnson maintains, and the Church does not refute, that he has since stopped all unauthorized tree cutting and has voluntarily vacated the property.").

This case is factually complicated by confusion during the period in issue regarding ownership of the Church Land in issue in this case in that the parties (the Church and Mr. Johnson) and the Tribe mistakenly believed that the Church Land was part of much larger tracts of land owned by the United States acting through the Bureau of Indian Affairs ("BIA") in trust for the Tribe ("Tribal Trust Land"). Counterclaim, ECF No. 7 ¶¶ 5-10; see Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). The Church claims that the Church Land is contiguous to but separate from a portion of the Tribal Trust Land. ECF No. 1 ¶ 7; see ECF No. 7-1 (referencing need to delineate boundary between Tribal Trust Land and "other lands owned by the tribe"). However, not until the summer of 2018, when BIA completed a survey, was it revealed that the land on which Mr. Johnson is alleged to have trespassed, cut trees and placed the trailer was not Tribal Trust Land.[3] Counterclaim, ECF No. 7 ¶ 8; ECF No. 7-1.

---

[3] In June 2018, the Tribe asked BIA to delineate the boundary line of Tribal Trust Land in the areas of the "alleged timber trespass that occurred on November 10, 2017." ECF No. 7-1. A survey was conducted in July 2018 that established that the "timber trespass did not occur on tribal trust lands." Id. This conclusion was communicated to the Tribe on August 7, 2018. Id.

Mr. Johnson claims, and the Church does not dispute, that he entered what the Church now claims is Church Land beginning in 2014 (believing it to be Tribal Trust Land) with the permission of the Tribe, acting through its Narragansett Indian Tribe Community Planning and Natural Resources Department, for the purpose of building a greenhouse.  ECF No. 1 ¶¶ 10-11; Counterclaim, ECF No. 7 ¶ 6.  However, this permission was limited in that it restricted disturbance of soil and vegetation to the worksite and specified that all areas outside the work zone would not be disturbed.  ECF No. 1-1; Narragansett Indian Meeting Church, 2023 WL 5094924, at *1.  Mr. Johnson alleges that he was the Tribe's designated project manager to operate the greenhouse project, which was funded for the Tribe by the Crane Foundation.  ECF Nos. 1 ¶¶ 10-11; 1-1; 15-1.  The Church alleges that any such permission was withdrawn in 2017 but does not specify when.  ECF No. 9 ¶ 6.  The Church also alleges that this permission did not include permission or authorization to cut trees, except to prepare the worksite for the greenhouse, which was completed in 2015.  ECF No. 1 ¶¶ 12-14, 16.  Mr. Johnson alleges that he believed his right to be present on the land designated for the greenhouse project also derived from his status as a member of the Tribe.  Counterclaim, ECF No. 7 ¶ 10.  The Church denies that Mr. Johnson is a member of the Tribe.  ECF No. 9 ¶ 1.[4]

In April 2017, the Church alleges, but Mr. Johnson denies, that he cut trees on Church Land that the Tribe and Mr. Johnson then understood was Tribal Trust Land.  ECF No. 1 ¶ 17.  In May 2017, Mr. Johnson admits that he placed the trailer on what he then understood was Tribal

---

[4] It is unclear from the pleadings whether and when the Church would acknowledge that Mr. Johnson had been a member of the Tribe.  A decision of the Rhode Island Superior Court suggests that this may have been through 2018.  See State v. Johnson, Nos. W3-2021-0030, W3-2019-0264A, W3-2019-0269A, 2023 WL 8876195, at *1 (R.I. Super. Ct. Dec. 15, 2023) (Mr. Johnson notified in January 2019 that his status as member of Tribe was then "in question"; in April 2019, following Tribe's decision to memorialize criteria for tribal membership adversely impacting Mr. Johnson, he was informed that he would be barred from Tribal Meeting and subsequently was convicted of obstruction, willful disturbance and violent and tumultuous actions when seeking to attend Tribal meeting).

Trust Land but alleges it was for security in connection with the authorized (by the Tribe) greenhouse project.  ECF No. 7 ¶ 18.  On May 9 and 12, 2017, the Tribe, at the request of the Church, ordered Mr. Johnson to stop any use or occupancy of the "Tribal Green House on the Narragansett Indian Reservation," to remove the trailer, to stop cutting trees and to do no further work on "this land or structure(s)."  ECF Nos. 1 ¶¶ 19-20; 1-3.  In November 2017, an Environmental Officer of the Tribe, acting on instructions from the Tribe, saw an excavator on Church Land and subsequently saw Mr. Johnson removing trees and told him to stop; he refused.  ECF No. 1 ¶¶ 21-27.  Mr. Johnson denies that he cut trees on Church Land in November 2017.  ECF No. 7 ¶ 28-29.  On November 14, 2017, believing that these activities had occurred on Tribal Trust Land, BIA ordered Mr. Johnson to stop cutting trees, removing stumps or disturbing the land.  ECF No. 1-5.  In June and July 2018 (at approximately the same time that the BIA survey revealed that the tree cutting was not on Tribal Trust Land), the Church advised Mr. Johnson (and "all those involved in the Greenhouse and surrounding area") that he did not have permission to use "Church property or Tribal lands" and demanded immediate removal of the trailer.  ECF Nos. 1-6; 1-7.  Yet Mr. Johnson continued to sleep/reside[5] in the trailer, which remained on Church Land.  ECF No. 1 ¶ 34.

By Counterclaim against the Church, Mr. Johnson alleges, but the Church denies, that he personally[6] had an agreement (of which the Church was aware) with the Crane Foundation to fund the greenhouse project, which the Church tortiously interfered with when it ordered him off its Land.  Counterclaim, ECF No. 7 ¶¶ 38-40.  He further asserts that he has a personal claim

---

[5] Mr. Johnson denies only that he resided in the trailer.

[6] Mr. Johnson's Rule 16 statement appears to undermine this claim in that it reflects that the application to the Crane Foundation for funding for the greenhouse project was made by the Tribe, not by Mr. Johnson personally.  ECF No. 15-1.

6

against the Church related to the cutting of certain fruit trees, although his pleading concedes that the trees belonged not to him but to the Tribe's "greenhouse project." Id. ¶¶ 50-51. And he alleges that the Church's order that he leave its Land resulted in his loss of $800 in personal property, as well as that he personally owes $906.92 for the electric bill for the Tribe's greenhouse project from September 2018 until August 2020. Id. ¶¶ 47-48; ECF No. 7-2.

### III.    Analysis of Fed. R. Civ. P. 30(b)(6) Topics

**Topics 1 and 2**. Topics 1 and 2 broadly ask the Church to assume the effectively impossible task of preparing a Fed. R. Civ. P. 30(b)(6) designee to testify regarding "any [and] all" involvement of, communications with and/or participation by the Tribe pertaining to all of the events in issue and to the conduct of the litigation. ECF No. 37 at 5-6. Topic 2 adds the irrelevant (and potentially harassing) subject of the decision to file this case and the conduct of the litigation, including how this case has been financed and who has paid the attorney's fees and costs. Id. The overbreadth of these topics, resulting in disproportionally burdensome preparation, and the irrelevancy and intrusiveness of topic 2 require a protective order. See Walker v. IHI Power Servs. Corp., C.A. No. 23-57 WES, 2025 WL 949239, at *3 (D.R.I. Mar. 28, 2025) (granting protective order to bar Fed. R. Civ. P. 30(b)(6) topics that covered entity opinions regarding, and legal analysis of, claims and defenses of parties in case). Accordingly, to that extent, the motion for a protective order is granted.

However, within the scope of topics 1 and 2, there plainly is specific subject matter that is highly relevant and appropriate in light of the claims and defenses. Most important is preparation to address fully the crux of Mr. Johnson's defense – that he acted with permission from the Tribe (including the degree to which that permission encompassed the cutting of trees after 2015 and the placement of the trailer in 2017) at a time when he, the Church and the Tribe

7

all believed that the land in issue was Tribal Trust Land, as well as his defense to trespass premised upon his belief he had a right to enter Church Land (whether due to the mistaken belief that it was Tribal Trust Land or due to an independent right to enter Church Land) based on his status as a Tribe member (potentially until 2019). Also pertinent is the Church's own knowledge and information reasonably available to the Church from the Tribe regarding the Tribe and the Crane Foundation agreements, as well as Mr. Johnson's role in connection with such agreements. Preparation for these topics requires the Church's designee to learn about the scope of the permission Mr. Johnson received from the Tribe (and whether and how it terminated, including whether and when Mr. Johnson ceased to be the greenhouse project manager and whether the Crane Foundation agreements were with the Tribe or Mr. Johnson personally), as well as what the Church understands to be Mr. Johnson's right to enter Tribal Trust Land and/or Church Land based on tribal membership as determined by and/or communicated to the Church by the Tribe.[7] The designee's preparation must be done not only by inquiry of the Church regarding information pertaining to and communications with the Tribe, but also by seeking such information as may be reasonably available to the Church through inquiry of the Tribe. To that extent, the Church's argument that this topic is off limits because it breaches tribal sovereignty (as a matter of internal Tribal matters and decision making) is overruled. That is, as a matter of what is relevant, proportional and not privileged pursuant to the Federal Rules of Civil

---

[7] Importantly, the relevant inquiry does not require invasion of the Tribe's sovereign determination of tribal membership. State of R.I. v. Narragansett Indian Tribe, 19 F.3d 685, 701 (1st Cir. 1994) ("retained sovereignty includes the power of Indians to make and enforce their own substantive law in internal matters, including matters such as membership rules"). Rather, the Church's designee should testify whether Mr. Johnson was acknowledged by the Tribe as a member at any relevant time, for example, at the time of the 2014 permission to launch the greenhouse project and the consequence of that status in relation to the entry on what was mistakenly thought to be Tribal Trust Land and later claimed to be Church Land. Also appropriate is what the Church's designee is able to ascertain by inquiry of the Church and the Tribe regarding whether and when that status may be deemed to have changed in light of the Church's allegation that Mr. Johnson is not now a member of the Tribe. ECF No. 9 ¶ 1.

Procedure, the Court finds that this information is highly relevant and discoverable. As to these more specific topics, the motion for a protective order is denied.

This ruling is intended to address what information is reasonably available to the Church and required to be provided in discovery in a case that the Church chose to bring against Mr. Johnson in this Court. Thus, for example, if the Tribe declines to waive but rather asserts its sovereign immunity and refuses to provide information to the Church's designee, such information is not reasonably available to the Church. The Church is cautioned that the resulting adverse impact of the assertion of the Tribe's sovereign immunity on Mr. Johnson's ability to develop essential facts in aid of his defense in this case may lead the Court to consider whether Mr. Johnson's ability to defend is impaired so that one or more of the claims against him must be dismissed.

**Topic 3**. Preparation regarding every public statement the Church has ever made regarding Mr. Johnson's tribal membership is discovery that is overbroad, of marginal relevance, burdensome to prepare and more efficiently pursued by other means. The Court notes that Mr. Johnson's argument that this topic is relevant because the Church has made untruthful public statements suggests that he is really attempting to pursue his dismissed slander claim. Accordingly, the protective order regarding this topic is granted, provided that the Church's designee may be questioned about a specific public statement that is relevant to the claims and defenses related to tribal membership at a specific point in time as it bears on the right to enter, cut trees or place a trailer on Church Land and/or Tribal Trust Land (as described *supra*) as long as reasonable notice of the specific public statement has been given so that the designee has time to prepare.

**Topic 4**. This topic seeks to unpack the irrelevant topic of Mr. Johnson's partially successful (by the State) criminal trespass prosecution. See State v. Johnson, 334 A.3d 107 (R.I. 2025). Mr. Johnson's argument that this topic is relevant because the charges included trespass on Church Land in 2017 and 2018 is belied by the Rhode Island Supreme Court's decision, which provides that the charges on which Mr. Johnson was found not guilty pertained to "diverse dates beginning in April 2019"[8] and that he was found guilty of vandalism and trespass for an incident that occurred on July 12, 2020. Id. at 107 & n.1 (emphasis added). Mr. Johnson's alternative argument that this topic should be allowed concedes that it is a fishing expedition in search of "impeachment material." ECF No. 39 at 8. The protective order regarding this topic is granted.

**Topics 6 and 12**. The Church produced in discovery and adverts to in the Complaint (ECF No. 1 ¶¶ 38-41) two reports regarding the value of the destroyed trees that are the focus of these topics. Any privilege that might have been available is waived. It is therefore entirely appropriate to question the Church's designee about the provenance of the reports and why the updated version was created. The protective order regarding these topics is denied.

**Topics 7 and 8**. The Church alleges that the trespass in issue occurred on Church Land and the specific trees cut (for which it seeks damages) were growing on Church Land. Mr. Johnson is not being sued for anything that occurred on Tribal Trust Land. Thus, these topics are squarely relevant. And while testimony to authenticate a land survey or to specify metes and bounds or natural markers may well be more efficiently provided through an expert, Mr. Johnson

---

[8] During the hearing, Mr. Johnson argued that the Rhode Island Supreme Court is wrong in that the "diverse dates" charged were prior to April 2019. While the Court finds this argument unpersuasive based on the clear quotation in the Rhode Island Supreme Court's decision, if correct, the argument would not advance Mr. Johnson's cause in that the Church is not relying on the criminal conviction to prove liability in this case. That is, preparation to testify regarding the details of "all participation by the Church" in the state's criminal prosecution of Mr. Johnson for trespass is plainly disproportional even if it conceivably has marginal relevance. ECF No. 37 at 7.

10

is entitled to inquire of the Church's designee what is the information that formed the basis for the Church's allegation (in its Complaint) that the conduct in issue occurred on what Mr. Johnson has acknowledged is Church Land.  See ECF No. 7 ¶ 5.  To that extent, the protective order regarding these topics is denied.

**Topics 10 and 11**.  With these topics, Mr. Johnson seeks to intrude into the Church's decision to file this case, including why it opted to file in this Court instead of in the Tribal Court. These topics appear to be an attempt to weaponize discovery in this case in furtherance of Mr. Johnson's ongoing and occasionally tempestuous dispute with the Tribe regarding an array of topics including Tribal membership.  See generally Johnson, 2023 WL 8876195, at *1-2.  As with topic 2, the subject matter is simply not relevant to any of the claims or defenses in this case.  The protective order regarding these topics is granted.

**Topic 13**.  This topic would require the Church's designee to prepare by performing an investigation, that would likely extend to inquiry of representatives of the Department of the Interior and the Town of Charlestown, to untangle all of the circumstances pertaining to the information filled in (the name of a Department of Interior representative), at some unspecified time in the past, on the property card for the Church.  How this burdensome inquiry will yield relevant information remains opaque.  Based on the disproportionality of the preparation task required for this at best marginally relevant topic, the protective order as to it is granted.

## IV.    Conclusion

Based on the foregoing, the motion of Plaintiff Narragansett Indian Meeting Church for a protective order to strike and/or limit the topics in the Fed. R. Civ. P. 30(b)(6) deposition notice (ECF No. 37) is hereby GRANTED in part and DENIED in part.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 6, 2026